J. W. HOWELL V. THE STATE.

No. 17663.   Delivered June 26, 1935.

The opinion states the case.

*O. Ellis,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for receiving stolen property, punishment being assessed at two years in the penitentiary.

Appellant was jointly indicted with his brother (C. E. Howell) and upon request for severance appellant was placed upon trial first. The second count in the indictment charged appellant and his brother with theft of seventy-five sacks of cotton seed cake from J. B. Voyles; the first count charged appellant and his brother with receiving from some unknown party the property in question after it had been stolen. Both counts were submitted to the jury, the conviction being upon the count for receiving.

Appellant contended in the court below and here urges that the evidence is insufficient to support the verdict. There is no conflict in the evidence. Appellant was engaged in the dairy business, his plant being located about three miles south of the City of Amarillo. Appellant bought large quantities of feed, such as alfalfa meal, cotton seed cake, bran, and other feed suitable for a herd of dairy cattle. This feed was frequently delivered in trucks other than the one owned and operated by appellant. C. E. Howell owned five cows in the dairy herd. He lived with appellant and worked for him in connection with the dairy. Appellant had some agreement with him about re-

muneration, the exact terms of which are not shown. Hugh Reeves was another paid dairy hand who had been working for appellant about two weeks at the time of the alleged offense. J. B. Voyles was foreman of a ranch, and had charge of a warehouse belonging to the ranch owners. This warehouse was in Oldham County, about sixty-eight miles west of appellant's dairy. On Sunday night, January 13, 1935, seventy-five sacks of cotton seed cake were stolen from the warehouse. Voyles learned of the theft about eleven-thirty on Monday. In the afternoon of that day a truck loaded with feed was driven to the barn at appellant's dairy. C. E. Howell and Reeves—who were at the residence when the truck drove to the barn—went to the barn and assisted in unloading the truck, which was immediately driven away. About forty-five minutes later officers accompanied by Voyles arrived and found the stolen cake, stacked in the open hall, or drive-way of the barn in plain view of everybody. Upon being questioned by the officers C. E. Howell told them that a man drove in there with a truck load of feed and that he helped unload it. He told them he had no knowledge of where the feed came from, did not know the man who brought it, and did not know what kind of truck he was driving. He did not pay the man for the feed, and it is not shown that he asked for pay. One of the officers testified as follows: "They showed us all through the barn. They didn't make any effort to hide anything. They showed us everything they had. It wasn't covered up in any way. It is a great big barn, open at two ends. Anybody going through there could have seen the feed easily." After the cake was identified by Voyles the officers took it away. Appellant was not at home when the cake was brought there, nor when it was taken away. Appellant's wife told the officers he had gone to Lamar, Colorado, in his truck to get a load of alfalfa meal. She testified that her husband left home about one or two o'clock on Sunday afternoon, and got back about one o'clock Tuesday morning, at which time she told him what had occurred. She testified that when appellant left home he said nothing to her about paying for any cake, nor about expecting any cake to be brought there, and that no one paid for the cake when it was left at appellant's place. When an officer went back on Tuesday morning to arrest appellant his truck—a Chevrolet—was standing near the barn loaded with alfalfa meal, the sacks bearing a Colorado milling company tag. The record shows that the truck which hauled the cake to appellant's barn did not belong to him. It was a Ford truck. It was afterwards found by officers in an

old garage in Amarillo. It bore Texas, New Mexico and Oklahoma license numbers. The Texas license was taken out in Potter County. It is not shown in whose name it was registered, but it was not that of appellant. By measurements and comparison of tracks the officers were satisfied the Ford truck found in Amarillo was the one in which the cake was hauled from the warehouse to appellant's barn.

The sheriff of Oldham County, in company with Mr. Voyles, came to Amarillo, arriving there about three-thirty P. M. Monday, where they secured a warrant to search appellant's place. What information caused them to take such action is not disclosed. Evidently they were not much behind the truck which hauled the stolen property.

Whatever suspicion might be cast upon appellant by reason of the facts stated, they do not in our judgment measure up to the rule required where the State relies upon circumstantial evidence for conviction. It is not shown that appellant, his brother, or Reeves was ever seen in Oldham County, or that any of them had any connection with the mysterious unknown driver of the truck. It is conceded by counsel for appellant that if he had made arrangements with the truck driver to deliver stolen property at appellant's barn, to be received by an innocent agent in appellant's absence, and it was so received, that appellant would be guity of receiving stolen property, assuming other elements of such offense to be present. That such an understanding existed finds no support in the testimony, save that some unknown party unloaded stolen feed at the dairy barn of appellant. This must have been the theory and argument of the State and however plausible it may be, we think the facts—not suspicions which might arise from the officers securing a search warrant for appellant's place—do not exclude every other reasonable hypothesis except appellant's guilt. Any citizen who might be away from home attending church on Sunday night, and upon his return find that during his absence some one had driven a stolen automobile into his garage and left it there would upon the same reasoning be much embarrassed.

The requirement of the law under the rules of circumstantial evidence is well understood. The principles involved are stated in Branch's Ann. Texas P. C., Sec. 1877, and in Vol. 18, Texas Jur., p. 443, Sec. 321, and may be epitomized in the statement that the circumstances relied on "must exclude every other reasonable hypothesis except that of appellant's guilt, and must go further than raising a probability of suspicion." See cases cited under the texts mentioned.

In our opinion the facts in the present case do not measure up to the required standard.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*